HOTTEL v. MASON ET AL.

1. TRUSTEES — PRESUMPTIONS ARISING FROM INACCURATE ACCOUNTS.— A trustee must keep and render accurate accounts of matters connected with the trust estate; and omissions or inaccuracies in his accounts inimical to the interest of his *cestui que trust* give rise to presumptions against him, which are decisive, unless overcome by collateral proofs establishing his perfect fairness and equity.

2. SURVIVING PARTNER — WHEN NOT A TRUSTEE.— During a partnership business, extending over four years, the books were kept under the supervision of both partners, but most of the entries were made by one member of the firm. His copartner, however, was active in conducting the business, had unrestricted access to the books, and might have familiarized himself with the accounts and the manner of keeping them. *Held* that, after the death of such copartner, it was error, on a settlement of the partnership accounts, to treat the surviving partner as a trustee.

3. SAME — FIDUCIARY RELATION TO HEIRS.— Where the partnership business was continued for eighteen months after the death of the

copartner, the surviving partner, who was also one of the executors
of the deceased copartner, must be regarded as acting in a fiduciary
capacity for the heirs of his copartner, and held to a strict account-
ability on a settlement of the partnership affairs, though the widow
of the deceased partner, who was a capable woman, had access to
the partnership books at all times.

4. SETTLEMENT OF PARTNERSHIP ACCOUNTS — PRESUMPTIONS FROM EVI-
DENCE.— Shortly before his death, the deceased partner sold a lot of
cattle, and received the purchase-money therefor. At the time of
this sale, the purchaser executed a trust-deed on land to secure a note
for an amount about equal to the purchase price, which note was de-
scribed as payable to the two partners. On a settlement of the part-
nership accounts before a referee, it appeared that the firm dealt in
cattle, and the purchaser admitted that he had had no other dealings of
similar import with the partnership or the deceased partner. *Held,*
that these facts were sufficient to overcome any presumption that
the sale was made on the deceased partner's individual account,
arising from the fact that he had individual property, and that the
transaction did not appear on the books of the partnership.

*Appeal from District Court of Arapahoe County.*

APPELLANT and Joseph Mason were associated as copart-
ners. The firm was the owner of certain mill property,
and carried on a milling business. It also became the
owner of herds of cattle and horses, and transacted the
usual business in connection therewith. On the 11th of
February, 1881, Mason suddenly died, and appellees suc-
ceeded as legatees to all his property, including his interest
in the partnership assets. His will provided for the con-
tinuation of the partnership business, notwithstanding his
decease, until such time as in the judgment of Mrs. Mason
and appellant, who were named as his executrix and exec-
utor, it should become desirable to wind up the partnership
affairs.

By virtue of the foregoing authority in the will the busi-
ness of the copartnership was continued for a considerable
period. But finally, in connection with the administration
upon the estate, an examination of the partnership ac-
counts and assets took place, and on the 18th of September,
1882, an alleged settlement was made. This accounting re-

ceived the approval of the county court in the final settlement of the estate, and the executrix and executor were duly discharged.

In February, 1885, a complaint instituting the present suit in equity for a restatement of the partnership accounts was filed. It is based upon the theory that appellant, by virtue of his familiarity with the partnership business, his superior advantages in manipulating the same, his influence over Mrs. Mason, and especially by virtue of the fact that during Mason's life-time as well as afterwards he attended largely to the keeping of the books, succeeded in overreaching Mrs. Mason, in deceiving the county court, and in procuring a settlement tainted by fraud and greatly to his own advantage. Various specific acts of fraud were alleged, and the settlement was otherwise impeached.

An answer being filed putting in issue all material averments of the complaint, and a sufficient replication thereto being tendered, the cause came on for trial. At this stage of the proceedings, " on motion of plaintiffs' attorneys, the defendant by his own attorneys consenting thereto," it was ordered that a reference be made, the referee to take and state an account of the partnership transactions and other matters referred to in the complaint, to reduce to writing the evidence of the witnesses, to examine all books, vouchers, deeds and other instruments relating to the partnership affairs, to hear and determine the whole issues, both of law and of fact, and to report to the court the evidence so taken, together with his findings of law and fact, and an account of the transactions mentioned in the complaint; also a judgment or decree in the premises.

Upon the investigation and hearing, the referee, in accordance with the foregoing order, reported the evidence, findings of law and fact, and a decree awarding plaintiffs the sum of $19,521.39. The report and decree were by the court, after a brief hearing, approved. To review this action the present appeal was taken. Other facts necessary to a full understanding of the opinion are sufficiently narrated therein.

Mr. L. S. DIXON and Messrs. BALLARD & ROBINSON, for appellant.

Mr. T. D. YONLEY and Mr. THOS. MACON, for appellees.

CHIEF JUSTICE HELM delivered the opinion of the court.

The parties differ in this court somewhat as to the specific character of the issues originally made by the pleadings. For reasons that will presently appear, however, we deem it unnecessary to consider this feature of the discussion. The pleadings consisted of a complaint, answer and replication; no demurrer was filed, nor was any question of law otherwise raised prior to trial.

The cause, by consent, went to a referee for the purpose of taking and stating a full and complete account of all the transactions of the firm of Mason & Hottel, both before and after Mason's decease, with instructions to report findings of law and of fact, together with a decree in accordance therewith. The referee found as a legal conclusion that the settlement of September 18, 1882, was obtained by deception and fraud on the part of appellant. There are matters in the record tending to sustain this finding, but its correctness is vigorously denied. We shall assume that the referee was clothed by the order of reference with power to adjudicate this question; and, for the purposes of the present review, his finding in this regard will be accepted, without, however, a formal investigation and approval. The case will be treated as one for an ordinary accounting and settlement of partnership affairs, and questions of fraud, save as incidental to the accounting, will receive no further notice.

Counsel for appellant insists that the findings of fact by the referee were imperfect. But the regularity of the order of reference, the general conduct of the trial by the referee, the manner of reporting his findings, and the procedure preliminary to the approval thereof, and entry of the decree by the district court, are not seriously challenged.

Among the principal matters urged for reversal, in both the oral and printed arguments, are alleged errors of the referee in determining adversely to appellant the *status* of certain items connected with the complicated transactions and accounts of the firm.

Mason sometimes recorded firm debits and credits, but, being a foreigner and unaccustomed to writing in English, he left the keeping of the books mainly to appellant. Appellant's familiarity with the firm affairs gave him an advantage over Mrs. Mason after her husband's death, in connection therewith. Besides, at this time Mrs. Mason was physically indisposed, and, reposing confidence in appellant, for a considerable period she trusted the firm business to him, though, at the alleged settlement consummated on September 18th, she employed counsel to look after her interests. In view of the foregoing circumstances, we commend the careful scrutiny with which all items in the book account objected to by Mrs. Mason were examined.

But the referee seems to have applied against appellant, throughout the entire period of the partnership business, the equitable rule of evidence governing the fiduciary relation of trustee, most earnestly contended for in this court by appellees' counsel. This rule may be stated as follows: A trustee must keep and render full and accurate accounts of all matters connected with the trust estate; and any omission or inaccuracies in his accounts, inimical to the interest of his *cestui que trust*, give rise to presumptions against him, which are decisive, unless overcome by collateral proofs affirmatively establishing his perfect fairness and equity in the premises. Pom. Eq. Jur., § 1063, and note; 3 Greenl. Ev. (13th ed.) § 253. In this respect it seems to us the referee unconsciously erred. The firm business extended through a period of nearly six years. Over four years of this time the books were kept under the supervision of both partners, and appellant did not occupy the position of trustee for Mason. Nor should appellant be subjected to the adverse presumptions indulged by courts

of equity against a partner when irregularities or defects in the partnership accounts are due solely to his negligence or other misconduct. For the unsatisfactory condition of the firm books the partners were, during Mason's life-time, *in pari delicto.* While appellant made most of the record entries, Mason was active in conducting the business. Both he and Mrs. Mason had unrestricted access to the books. They were or might have been familiar with the accounts, and the manner of keeping them. The partners were on an equal footing, and, for loose habits and negligence in reporting and recording firm transactions, Mason should share the responsibility with appellant.

During the remaining eighteen months of the partnership, Mrs. Mason, by virtue of the will, became associated with appellant in the business. She appears to have been a capable woman, and had access to the books at all times. But throughout *this* period we should, perhaps, regard appellant as acting in a fiduciary capacity stronger than that ordinarily existing between partners; for, in addition to his advantages over Mrs. Mason, above mentioned, he was also an executor, co-operating with her in administering upon Mason's estate for the benefit of his children as well as his widow; and, of course, all matters pertaining to the partnership business and the keeping of the partnership accounts, to a greater or less extent, involved the interests of the minor heirs.

With these preliminary observations touching generally the facts of the case and the law pertaining thereto, we pass to a brief examination of some of the specific items as to which appellant's counsel challenges the findings of the referee.

Early in the year 1880 Mason sold to one Chaffee one hundred head of cattle, and a short time prior to his death he received from Chaffee $1,702.35 therefor. A few weeks subsequent to Mason's decease, appellant, learning of the payment, entered the same upon the firm books as a firm credit. The referee disallowed this item, treating

it as an individual transaction of Mason's, independent of the firm. Appellant was thus deprived of one-half of the amount collected. The referee bases his action in the premises substantially upon the following grounds: That there is no evidence indicating that Mason was not prompt and honest in reporting matters disposed of by him to the firm; that he did have money outside of the firm business which might have been invested in cattle; that Chaffee says he "supposed" the cattle to have belonged to Mason; also that the firm books show "no such cattle account," and fail to record otherwise anything about the sale.

The original transaction having occurred during the lifetime of Mason, and the suit being brought by his executrix, appellant was, by virtue of section 3641, General Statutes, disqualified from giving testimony on his own behalf concerning the partnership interest therein. But in the *first* place, while at the time of the sale the firm owned a large herd of cattle, there is no evidence in the record even tending to show that Mason was the private owner of one hundred head, or any other considerable number. Appellees' counsel state, as an uncontroverted fact, that Mason conducted the purchase of what was known as the "Farmer" herd, but this herd at once, or very soon thereafter, became firm property. *Secondly.* At or about the precise date of the purchase of these cattle by Chaffee, he executed a trust-deed upon certain realty to secure a promissory note for $1,566, described as payable "to the order of Joseph Mason and B. F. Hottel," which deed was duly filed for record by Mason. *Thirdly.* Chaffee upon the witness stand, though evidently hostile to appellant, reluctantly admitted on cross-examination that he had no other dealings of similar import and magnitude with Mason & Hottel, or with Mason alone; also that the trust-deed must have been given to secure the purchase price of these cattle, and that the $1,702.35 was therefore paid by him to Mason in liquidation of the debt described in the deed, with interest. The note itself was not produced in evidence, and Chaffee says

that it was doubtless delivered to him when he made the payment, and was lost or destroyed.

It may be a matter of some significance that no antecedent record of the sale appears in the firm accounts; but the character of this significance depends upon the integrity and punctuality of Mason in reporting the sale, as well as upon the interest of appellant in making the proper record thereof. We recall attention to the fact that, as to this item, the rule governing a trustee's accounting with his *cestui que trust* is certainly inapplicable. The silence of the books concerning this matter should not, in our judgment, be treated as decisive against the interest of the partnership. Had appellant's reliance in the premises rested solely upon the entry of the item in the account after Mason's death, the action of the referee might perhaps be sustained; although many transactions took place during the six years covered by the firm business that were not recorded with the accuracy of professional book-keeping, or at all. But, as already indicated, appellant produced strong collateral evidence. The recital of the trust-deed given under the circumstances, and unexplained, amounts to proof almost conclusive. Mason appears to have been a good business man, and he would hardly, upon the sale of his own property, have taken a note payable to himself and partner, secured by a trust-deed reciting an apparent firm ownership in the property sold.

Had the presumption against appellant, recognized by the referee as arising from the silence of the books concerning the sale, actually existed, it would have been completely overcome. The trust-deed, having been executed under the supervision of Mason, must be regarded as showing his view on the question of title to the cattle sold. If there is any explanation of the matter consistent with Mason's private ownership, the burden of giving it was upon appellees and not upon appellant. Mason's failure to report the payment in question may be attributed to the fact that his death so quickly followed; and it is not impossible that his

neglect to formally record the sale when made, arose from the knowledge that it was so clearly evidenced by the note and trust-deed.

The referee employed an expert accountant for the purpose of examining the books of Mason & Hottel kept during the six years of the partnership, restoring a lost ledger, preparing a trial balance and rendering other needed assistance. This accountant reported, as one of the results of his investigation, that these books, on September 18, 1882, showed a balance to the credit of the firm of $17,268.56 in the Poudre Valley Bank of Fort Collins. Governed by this report, the referee treated the sum named as a firm asset, and one-half of it enters into the decree against appellant.

The cashier of this bank was sworn as a witness. The bank books were produced, and, by agreement of counsel, duly certified extracts therefrom were admitted in evidence. These books showed that on the said 18th of September there was a balance to the credit of the firm of but $1,775.75. Thus it appears by the most reliable evidence that the showing made in the company's books of a bank credit at the date mentioned of upwards of $17,000 was wrong, and that the real credit was but little more than one tenth of that sum. The correctness of the bank books is not questioned, nor is the accountant charged with inaccurately representing the company's books.

Counsel for appellees insist that the difference between the sum actually in the bank to the firm's credit and the amount that, according to the firm books, should have been there, must be treated as having been drawn out by appellant and appropriated to his private use. With reference to this proposition we suggest that, in the *first* place, if appellant were actually appropriating to his private use sums of money aggregating upward of $15,000, he would naturally have charged, or at least have attempted to charge, the company with sham expenditures sufficient to offset the amount misappropriated. It is hardly in accordance with human experience to suppose that he would will-

ingly or thoughtlessly have left the accounts in a condition to inevitably arouse suspicions of his guilty conduct. *Secondly*, the referee does not return a specific finding imputing to appellant the perpetration of this particular kind of fraud. He does, however, report that no stock account was preserved during the existence of the firm; that the books were carelessly and negligently kept, and that many important transactions were not entered therein at all.

The evidence justifies these findings of the referee. It shows that many matters should have been recorded in the firm books which were not. This was especially true as to that portion of the business transacted through banks with which the firm was in the habit of dealing. It appears that, instead of attempting fullness and accuracy in the regular firm books concerning items covered by bank accounts, the practice of the partners was to rely largely upon pass-books, checks and stubs, vouchers returned, stated settlements, and reports given by the banks from time to time when requested. Sometimes, also, matters that would otherwise have been recorded were omitted on account of the absence of appellant. These explanations tend to show that the large difference between the accountant's report and the bank books may have been due to legitimate expenditures of the firm by means of checks, drafts and the like, concerning which no record was preserved in the partnership books. They are consistent with the finding of the referee on the subject of negligence in keeping the books, and do not necessarily indicate dishonesty on the part of appellant or Mason in the business.

The *sufficiency* of the foregoing explanations, however, is a question we do not now propose to consider or determine. There is enough before us to warrant the conclusion that the referee probably dealt with appellant in this matter as a trustee, and gave undue weight to the manifest imperfections of the books, notwithstanding the fact that for more than two-thirds of the period covered by the partnership, Mason was also to blame for these imperfections.

The foregoing discussion with reference to the item from the Poudre Valley Bank is in the main equally applicable to the partnership account with "A. K. & E. B. Yount," another banking house. The expert accountant found that, according to the firm books, there should have been, on the 18th of September, 1882, in the latter bank, to the credit of the firm, $2,915.29. The books of this bank were not offered in evidence; but Mrs. Yount, who attended to the bank business, testified that some time during the year 1880 *Mr. Mason withdrew from the bank the entire deposits of Mason & Hottel, and that thereafter the partnership made no further deposits in that bank.* Yet notwithstanding this testimony, which was uncontradicted, the referee adopted the report of the accountant, and the further sum mentioned, of nearly $3,000, is also treated as a firm asset.

Before passing from the subject of these bank accounts, one additional matter should perhaps be noticed. It appears that early in August, 1882, when appellant, Mrs. Mason, and Rhodes, her attorney, were examining the firm books and endeavoring to make a statement in connection with the final settlement of the Mason estate, and closing up of the partnership business, appellant reported, *and the bank books showed,* a debit by overdraft in the Poudre Valley Bank against the firm of $6,434.84. Between the date mentioned and the 18th of September following, deposits were made sufficiently large to cancel the overdraft, meet current expenses, and leave the aforesaid balance of $1,775.75 in favor of the firm. Mrs. Mason and Rhodes both testify that appellant made no subsequent report to them of the change that had taken place in the bank account, and that the settlement was consummated on September 18th upon the basis of an overdraft of $6,000 instead of the credit of $1,700. This omission, and appellant's testimony explanatory thereof, are severely characterized by counsel for appellees.

But counsel for appellant earnestly insists that the mode of settlement adopted rendered it not only unnecessary, but

also improper, to consider in the final report the change in question. He asserts that, though the statement of the partnership account was not formally rendered until September 18th, the parties understood that the partnership business was practically closed on the 6th or 7th of August preceding, and their computations rested upon the condition of the bank account at that date. His position is that from the debts due the firm, treated on August 7th as assets, appellant was to pay this overdraft, together with other firm liabilities, and that, by thus using assets as collected in liquidation of liabilities, no real change in the financial condition of the firm took place; hence he argues the settlement, as made, " was made in all respects fair to Mrs. Mason and the estate." To corroborate this theory, counsel refers to the fact that in the memorandum prepared by Rhodes, upon which the settlement ultimately took place, opposite this particular bank item is written the following: "1882, August 4 to 7." The foregoing view of the proceeding in question is not unreasonable. If, however, deliberate fraud in this regard were established, it would doubtless tend to impeach appellant's good faith in other respects, and, coupled with additional appropriate proofs, might warrant charging against the firm the supposed bank credit of more than $17,000. But this, with other matters, is left for reconsideration upon the further hearing of the cause.

We do not wish to be understood as now deciding that the referee was wrong in his ultimate conclusions concerning the two bank items above discussed. As already stated, he was probably governed in determining appellant's liability in connection therewith, to a very large extent, by an erroneous view of the law applicable thereto; and we must assume that, but for this mistake of law, he might have adjudicated these items differently. For this, as well as for other reasons above given, in our opinion the judgment should be reversed, and the cause remanded for further proceedings. It is unnecessary to discuss the remaining objections urged by appellant against specified conclusions

of the referee.  Upon a retrial of the case, such mistakes or errors, if any there were, may not be repeated.  The parties need not incur the expense of retaking all the evidence; in so far as is practicable, the reconsideration of the cause may be had upon the proofs originally reported by the referee, coupled with such additional evidence as may be produced.

*Reversed.*